1    **WO**

2

3

4

5

6             IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8

9   Loretta T. Avent,                )    No. CV-05-4211-PHX-SMM

10                               )    **MEMORANDUM OF DECISION AND**
              Plaintiff,            )    **ORDER**

11                               )

12   v.                               )
                              )

13   Tempe Union High School District No. )
   213,                              )

14                               )

15            Defendant.         )
                              )

16   _____ )

17         Before the Court is Defendant Tempe Union High School District's ("the

18   District") Motion for Summary Judgment (Dkt. 63). Plaintiff Loretta T. Avent

19   ("Plaintiff") opposes the motion. (Dkt. 74.) Having reviewed the parties' contentions,

20   the Court now issues this Memorandum of Decision and Order.

21                        **BACKGROUND**

22         The District is a school district located in Maricopa County, Arizona. Plaintiff is

23   an African-American woman who was hired as a security guard for Desert Vista High

24   School ("Desert Vista"), a school located within the District. (Dkt. 64, Def.'s Statement

25   of Facts ("DSOF") ¶¶ 1, 2.)[1] Desert Vista's attendance area includes neighborhoods in

26

27          _____

28          [1] Plaintiff's Statement of Facts in support of her Response (Dkt. 70) fails to set forth
correspondingly numbered paragraphs to the District's Statement of Facts, as required by the
Local Rules. LRCiv 56.1(b). An opposing party's failure to set forth the separate statement

1   Ahwatukee and Chandler, and includes the Lone Butte area of the Gila River Indian
2   Community.  (DSOF ¶ 1.)  Plaintiff was hired by Dr. Joe McDonald, the Desert Vista
3   principal from 1994 to 2006.  (DSOF ¶¶ 4-5.)  Plaintiff was hired on a year-to-year
4   contract, beginning in the fall of 2003.  (DSOF ¶¶ 3, 16.)  Plaintiff had an employment
5   contract for the 2004-2005 school year, and that contract expired on May 26, 2005.
6   (DSOF ¶ 90.)  Plaintiff previously worked in the administration of President Clinton on
7   issues affecting Native Americans.  (DSOF ¶ 2.)  Because of her experience working on
8   Native American issues, Plaintiff was assigned responsibilities beyond those ordinarily
9   assigned to security guards, including working with Native American students.  (DSOF ¶
10  26.)

11         Plaintiff sought a position at Desert Vista because she lived outside the attendance
12  area and she wanted her granddaughter, who lived with her, to attend Desert Vista.
13  (DSOF ¶ 17.)  Students who live outside the attendance area of a school can nonetheless
14  attend a school at which their parents or guardians are employed.  (DSOF ¶ 18.)
15  Plaintiff's granddaughter tried out for the Desert Vista volleyball team in fall of 2004, but
16  was not selected.  (DSOF ¶ 30.)

17         In the summer of 2004, The District hired Dr. Shirley Miles as the new
18  superintendent.  (DSOF ¶ 27.)  Dr. Miles appointed Plaintiff as the Parent Liaison for the
19  District in January or February 2005.  (DSOF ¶ 28.)  In her role as Parent Liaison,
20  Plaintiff communicated with parents of students regarding the District's performance.
21  (DSOF, Ex. 2, Dep. of Loretta Avent 63:17-21.)  This included addressing concerns
22  regarding Lone Butte students, and coordinating meetings at which concerns could be
23  addressed.  (Id. at 67:14-68:13.)  On February 8, 2005, Plaintiff, Dr. Miles, and a number

24  _____

25  of facts in this manner requires that the moving party's statement of facts be deemed
    admitted for purposes of a motion for summary judgment. LRCiv 56.1(b)(2). However, the
26  District's Statement of Facts in support of its Reply identifies, in correspondingly numbered
    paragraphs, Plaintiff's admissions or denials of Defendant's Statement of Facts. (Dkt. 79.)
27  Therefore the Court will use the District's Reply Statement of Facts to determine what facts
28  are in dispute.

of Native American students and parents attended the Desert Vista Site Council Meeting to address concerns.  (DSOF ¶ 35.)

On March 25, 2005, Plaintiff filed her first discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff alleged that Dr. McDonald made her employment difficult as a result of her concerns about her granddaughter being cut from the volleyball team.  Plaintiff stated that she believed Dr. McDonald was trying to force her to resign due to her age.  (DSOF ¶ 37.)  The EEOC dismissed Plaintiff's discrimination charge on April 21, 2005.  (DSOF ¶ 41.)

On March 31, 2005, Plaintiff filed another discrimination charge with the EEOC. That charge stated that Plaintiff had been vocal about the needs of Lone Butte students. (DSOF ¶ 42.)  Plaintiff claimed that Dr. McDonald was retaliating against her for "continuing to oppose the school's pattern and practice of abandoning the educational mission of the students of color and by exercising the protection of Native American students."  (Id.)  The EEOC determined that this charge failed to state a claim under any statutes enforced by the EEOC, and closed the file on this charge.  (DSOF, Ex. 11.)

On April 26, 2005, representatives from the District and Desert Vista met with representatives from the Gila River Indian Community ("the April 26 meeting").  (DSOF ¶ 44.)  Plaintiff arranged the April 26 meeting.  (DSOF ¶ 45.)  Dr. Miles believed the meeting would be a dialogue between the District and Gila River Indian Community leaders to address issues.  Dr. Miles did not realize that students would be in attendance. The press was also in attendance.  (DSOF ¶ 46.)  Mary Thomas, Lieutenant Governor of the Gila River Indian Community, was also in attendance, told the District representatives that it was a "listening meeting," and discouraged District representatives from interjecting.  (DSOF ¶ 48; DSOF, Ex. 12, Dep. of Nicole Greason 18:21-19:2.)  Students, former students, and parents of students at the April 26 meeting told stories about their concerns, asserting that students had been called "savages" on campus, told to "go back where [they] came from," and were unfairly singled out by campus security when allegations of misconduct arose.  (DSOF ¶ 49.)

1    Plaintiff then arrived at the April 26 meeting and stated that Desert Vista was not

2    meeting its educational mission to Native American students.  (DSOF ¶ 50.)  She also

3    stated that Dr. McDonald was deficient as a leader.  (DSOF ¶ 51.)  Plaintiff attacked Dr.

4    McDonald and his ability to run Desert Vista, and claimed that Lone Butte students were

5    mistreated at the school.  (DSOF ¶ 52.)  The meeting was publicized and reflected

6    negatively on Desert Vista and the District.  (DSOF ¶ 53.)

7    On May 9, 2005, Plaintiff filed a third charge with the EEOC, stating that Dr.

8    McDonald had retaliated against her for filing two previous EEOC charges and for

9    opposing the school's pattern or practice of abandoning the educational mission of

10    students of color.  Plaintiff alleged that Dr. McDonald retaliated against her by hiring an

11    investigator to collect information on her, by soliciting negative information about her

12    from staff and parents, and by directing her not to speak with Native American students

13    regarding their issues or concerns.  Plaintiff also alleged that Dr. McDonald harassed her

14    by telling her that nothing was going to happen with her previous EEOC charges.  (DSOF

15    ¶ 54.)

16    On May 10, 2005, Dr. McDonald contacted Janet Seegren, Assistant

17    Superintendent for Human Resources, stating that he had concerns regarding Plaintiff and

18    her performance.  (DSOF ¶¶ 7, 55.)  Ms. Seegren told Mr. McDonald that she would need

19    to review evaluations relating to Plaintiff's performance.  (DSOF ¶ 56.)  Dr. McDonald

20    signed Plaintiff's evaluations, which indicated that Plaintiff received "meets standards in

21    all categories."  (DSOF ¶ 57.)  Dr. McDonald stated that he had some concerns that were

22    not set forth in the evaluation.  (DSOF ¶ 58.)  Ms. Seegren did not change the

23    administrative recommendation to issue Plaintiff a contract for the 2005-2006 academic

24    year.  (DSOF ¶ 59.)

25    On May 11, 2005, the District's administration recommended that Plaintiff's

26    contract be renewed for the following year.  (DSOF ¶ 60.)  The Governing Board

27    accepted the administration's recommendation, and approved rehiring Plaintiff to work as

28    a security guard.  (DSOF ¶ 61; DSOF, Ex. 19 at 9.)

1    On May 12, 2005, Plaintiff obtained and served an Injunction Against Harassment

2  against Dr. McDonald.  (DSOF ¶ 62.)  The injunction stated that Dr. McDonald was not

3  to contact Plaintiff in person or by telephone, and not to go on or near where Plaintiff

4  resided.  (DSOF ¶ 63.)  On May 13, 2005, Ms. Seegren tried to meet with Plaintiff to

5  discuss how they could facilitate compliance with the injunction until such time as it was

6  amended or vacated by the issuing court.  (DSOF ¶ 64.)  Plaintiff refused to meet with

7  Ms. Seegren.  (DSOF ¶ 65; DSOF, Ex. 2, Dep. of Loretta Avent 193:24-194:16.)

8  Plaintiff then informed the District receptionist that she was leaving campus for the rest of

9  the day.  (DSOF ¶ 66.)

10    On May 13, 2005, the District faxed a letter to Plaintiff's counsel outlining

11  Plaintiff's work schedule and assigned duties.  (DSOF ¶ 67.)  The letter also addressed

12  where she should park and her assigned work area.  (DSOF ¶ 68.)  Plaintiff was instructed

13  not to be in the administration building where Dr. McDonald's office was located, and not

14  to be in the visitor parking lot near the administration building.  (DSOF ¶ 69.)  Plaintiff

15  was instructed to clock in and out on the machine in the cafeteria, and not the machine in

16  the administration building.  (DSOF ¶ 69.)  The letter instructed Plaintiff to contact

17  Assistant Principal Bob Cox if she had any difficulties, and informed her that she would

18  no longer report to Roseyn Hood, her previous supervisor.  (DSOF, Ex. 1, Decl. of Janet

19  Seegren, Ex. B at 3.)

20    On May 16, 2005, Plaintiff did not report to work.  (DSOF ¶ 70.)  That afternoon,

21  Ms. Seegren was served with a Notice of Hearing prior to Injunction Against Harassment

22  identifying Ms. Seegren as the defendant and Plaintiff as the aggrieved party.  (DSOF ¶

23  71.)  Plaintiff also sought injunctions against harassment against Bob Cox, a Desert Vista

24  Assistant Principal, and Beth Lyon, the Desert Vista Counseling Office Receptionist.

25  (DSOF ¶ 72.)

26    On May 17, 2005, Plaintiff parked near the administration building and clocked in

27  on the machine located in the administration building.  (DSOF ¶¶ 74-75.)  Plaintiff

28  refused to accept any further written letter of direction from the administration.  (DSOF ¶

76; DSOF, Ex. 2, Dep. of Loretta Avent 212:19-23.)  Plaintiff told Joe Feinstein, the lead security guard attempting to deliver the letter, that any communication directed to her need to be delivered to her attorney.  (DSOF ¶ 77.)  Later that day, when Mr. Cox began speaking with Plaintiff, Plaintiff responded that if he continued to talk to her she would call the sheriff and have Mr. Cox arrested, put in handcuffs, and taken away.  (DSOF ¶ 78.)

Following this conduct, Dr. Miles signed a Notice of Reassignment to Home. (DSOF ¶ 80.)  Mr. Cox attempted to deliver the Notice of Reassignment to Plaintiff, but she refused to accept service.  (DSOF ¶ 81.)  Based on these incidents, the District administration determined that Plaintiff was unwilling to perform her assigned duties or respond to reasonable direction from her supervisors.  (DSOF ¶ 82.)  The administration concluded that Plaintiff's continued employment in her position with the District could not be managed.  (DSOF ¶ 83.)  On June 8, 2005, the District recommended to the Governing Board to rescind the offer of employment to Plaintiff for the school year 2005-2006.  (DSOF ¶ 84.)  The Governing Board rescinded Plaintiff's contract offer for the 2005-2006 school year.  (DSOF ¶ 85.)

Plaintiff never submitted an employment discrimination complaint to the District under the District's non-discrimination policy.  (DSOF ¶ 86.)  Plaintiff later amended her May 9, 2005 charge with the EEOC to state that she was terminated from her security guard position on June 8, 2005.  (DSOF ¶ 87.)  The EEOC dismissed Plaintiff's amended charge on September 23, 2005.

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242,

248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

## DISCUSSION

Plaintiff sets forth four claims in her First Amended Complaint (Dkt. 18): (1) violation of her First Amendment right to free speech pursuant to 42 U.S.C. § 1983; (2) wrongful termination pursuant to A.R.S. § 23-1501; (3) violation of Title VII; and (4) violation of Title VI. The District seeks summary judgment as to each of these claims. These claims will be discussed in turn.

### A. First Amendment/§ 1983

Plaintiff asserts that the District retaliated against her for statements she made at the April 26 meeting, and that this retaliation violated her First Amendment right to free speech. (First Am. Compl. ¶¶ 28-34.) In order to state a claim for violation of the First

1   Amendment's protection of free speech, a public employee must show that the employee

2   spoke as a citizen on a matter of public concern. <u>City of San Diego v. Roe</u>, 543 U.S. 77,

3   80 (2004); <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006). Additionally, the public

4   employee must demonstrate that the alleged adverse employment action was caused by

5   the exercise of constitutionally protected First Amendment freedoms. <u>Mt. Healthy City</u>

6   <u>Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283-84 (1977).

7       The first inquiry to guide constitutional protections accorded to public employee

8   speech requires determining whether the employee spoke as a citizen on a matter of

9   public concern. <u>Garcetti</u>, 547 U.S. at 418. "If the answer is no, the employee has no First

10  Amendment cause of action based on his or her employer's reaction to the speech." <u>Id.</u>

11  The controlling factor in this inquiry is whether the statements were made pursuant to the

12  employees official duties. <u>Id.</u> at 421. "[W]hen public employees make statements

13  pursuant to their official duties, the employees are not speaking as citizens for First

14  Amendment purposes, and the Constitution does not insulate their communications from

15  employer discipline." <u>Id.</u>

16      The employee in <u>Garcetti</u> did not dispute that the speech at issue was made

17  pursuant to his official duties. <u>Id.</u> Therefore the Court did not "articulate a

18  comprehensive framework for defining the scope of an employee's duties in cases where

19  there is room for serious debate." <u>Id.</u> at 424. No comprehensive framework is needed

20  here, as there is no room for serious debate that Plaintiff's statements at the April 26

21  meeting were made pursuant to her official duties. In addition to her duties as a security

22  guard, Plaintiff was assigned to work with Native American students at Desert Ridge.

23  (DSOF ¶ 26.) Dr. Miles later appointed Plaintiff to serve as Parent Liaison. (DSOF ¶

24  28.) Prior to the April 26 meeting, Plaintiff attended a District Site meeting to address

25  issues regarding Native American students. (DSOF ¶ 35.) In her capacity as Parent

26  Liaison, Plaintiff arranged for the April 26 meeting. (DSOF ¶ 45.) It is therefore clear

27  that Plaintiff's statements at the April 26 meeting were made pursuant to her official

28  duties.

1    In response to these facts, Plaintiff asserts that she was "not hired to be a public

2    advocate for Lone Butte [Gila River Indian Community] students.  She was hired to be a

3    security guard."  (Dkt. 74, Pl.'s Resp. to Def.'s Mot. for Summ. J. 10:13-14.)  But

4    Plaintiff does not dispute that, subsequent to her initial hiring, she was appointed to serve

5    as Parent Liaison, or that she arranged for the April 26 meeting.  Indeed, she admitted as

6    much in her deposition.  (DSOF, Ex. 2, Dep. of Loretta Avent 63:1-21, 67:23-68:13.)

7    Plaintiff also states that Garcetti cautions against using "excessively broad job

8    descriptions" to limit public employee speech.  547 U.S. at 424.  Although this is true,

9    Plaintiff's role as Parent Liaison did not stem from an excessively broad job description,

10   but rather from a specific appointment based on Plaintiff's prior work with Native

11   Americans and other students of color.  Therefore her argument is unavailing.

12   Furthermore, Plaintiff fails to demonstrate that the adverse employment action was

13   caused by her statements.  Regarding causation, the initial burden is on Plaintiff to show

14   that her conduct was constitutionally protected, and that the conduct was a "substantial"

15   or "motivating" factor in the adverse employment action.  Mt. Healthy, 429 U.S. at 287.

16   If Plaintiff meets this burden, the District must then show that it would have rescinded

17   Plaintiff's offer of employment for the 2005-2006 school year even in the absence of the

18   protected conduct.  Id.

19   Plaintiff's offer of employment was rescinded not because of her statements at the

20   April 26 meeting, but because of her subsequent conduct.  The District decided to renew

21   Plaintiff's contract on May 11, 2005—*after* her statements at the April 26 meeting.

22   (DSOF ¶ 60.)  Plaintiff subsequently refused to accept direction from Desert Vista

23   administrators when they sought to adjust her ordinary responsibilities in order to avoid

24   violating the injunction obtained against Dr. McDonald.  (DSOF ¶¶ 64-65, 74-78.)  In

25   fact, Plaintiff then sought injunctions against three other Desert Vista employees and

26   threatened to have one of them arrested.  (DSOF ¶¶ 71-72, 78.)  Plaintiff received notice

27   regarding where she was to park and clock in, but refused to abide by those adjustments.

28   (DSOF ¶¶ 74-7.)  These actions by Plaintiff, and not her statements at the April 26

1   meeting, caused the District to recommend Plaintiff's offer of employment be rescinded.

2   Plaintiff therefore fails to meet the causation requirement, even if her statements at the

3   April 26 meeting were constitutionally protected.  Mt. Healthy, 429 U.S. at 287.

4         The District's motion for summary judgment shall be granted as to Plaintiff's First

5   Amendment § 1983 claim.

6   **B.  Wrongful Termination**

7         Plaintiff's second claim for relief alleges wrongful termination in violation of the

8   Arizona Employment Protection Act, A.R.S. § 23-1501(3).  (First Am. Compl. ¶¶ 35-42.)

9   That statute provides, in pertinent part:

10         3.  An employee has a claim against an employer for termination of
           employment only if one or more of the following circumstances have
11         occurred:
           . . .
12         (c) The employer has terminated the employment relationship of an
           employee in retaliation for any of the following:
13              (i) The refusal by the employee to commit an act or omission that
           would violate the Constitution of Arizona or the statutes of this state.
14              (ii) The disclosure by the employee in a reasonable manner that the
           employee has information or a reasonable belief that the employer, or an
15         employee of the employer, has violated, is violating or will violate the
           Constitution of Arizona or the statutes of this state . . . .
16

17   A.R.S. § 23-1501(3)(c)(i)-(ii).

18         The District argues that summary judgment should be granted on this claim

19   because Plaintiff cannot establish that she was terminated.  (Def.'s Mot. for Summ. J.

20   14:23-15:6.)  The District asserts that Plaintiff had an employment contract for the 2004-

21   2005 school year that expired on May 26, 2005.  (DSOF ¶ 90.)  The District further

22   asserts that Plaintiff never signed, and was not ultimately offered, an employment

23   contract for the 2005-2006 school year.  (Def.'s Mot. for Summ. J. 14:25-27.)  Plaintiff

24   does not deny that her contract expired, but asserts that she "had been informed that her

25   contract would be renewed."  (Pl.'s Resp. 11:26-28.)

26         The public policy of the State of Arizona is that the employment relationship is

27   contractual in nature.  A.R.S. § 23-1501(1).  Arizona courts apply common law principles

28   of contract interpretation in determining whether the requirements of § 23-1501 have

1    been satisfied.  <u>Johnson v. Hispanic Broadcasters of Tucson, Inc.</u>, 2 P.3d 687, 689 (Ariz.

2    Ct. App. 2000)(citing <u>Taylor v. State Farm Mut. Auto Ins. Co.</u>, 854 P.2d 1134, 1138

3    (Ariz. 1993)).  For a contract to exist, there must be an offer, acceptance of the offer, and

4    consideration.  <u>Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.</u>, 542 P.2d 817,

5    819 (Ariz. 1975); Revised Arizona Jury Instructions (Civil) ("RAJI") Contract 3 (4th ed.).

6    The person making the offer may revoke the offer at any time before the communication

7    of acceptance by the person to whom the offer is made.  <u>See Richards v. Simpson</u>, 531

8    P.2d 538, 540-41 (Ariz. 1975); RAJI Contract 5.  An acceptance is an expression of

9    agreement to the terms of the offer by the person to whom the offer was made.  <u>Contempo

10   Const. Co. v. Mountain States Tel. & Tel. Co.</u>, 736 P.2d 13, 15 (Ariz. Ct. App. 1987);

11   RAJI Contract 6.

12       There is no dispute in this case that on May 11, 2005 the District's Governing

13   Board approved issuing Plaintiff a contract to work as a security guard for the 2005-2006

14   school year.  (DSOF ¶ 60.)  Nor is there a dispute that on June 8, 2005 the Governing

15   Board rescinded the offer.  (DSOF ¶ 85; DSOF, Ex. 1, Decl. of Janet Seegren, Ex. F,

16   Letter to Loretta Avent dated June 13, 2005; DSOF, Ex. 2, Dep. of Loretta Avent 217:22-

17   24.)  Plaintiff does not assert that she accepted the offer before it was revoked.  As no

18   contract was ever formed, no employment relationship existed for the 2005-2006 school

19   year.  Plaintiff was therefore not terminated, and her claim for wrongful termination fails.

20   The District's motion for summary judgment shall be granted as to Plaintiff's Wrongful

21   Termination claim.

22       **C.  Title VII**

23       Plaintiff's third claim for relief alleges violation of Title VII of the Civil Rights

24   Act of 1964, 42 U.S.C. § 2000e *et seq.*  (Dkt. 18, First Am. Compl. ¶¶ 43-45.)  To make

25   out a prima facie case of retaliation under Title VII, an employee must show that (1) she

26   engaged in a protected activity; (2) her employer subjected her to an adverse employment

27   action; and (3) a causal link exists between the protected activity and the adverse action.

28   <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).  If a plaintiff has asserted a

1   prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate

2   nondiscriminatory reason for its decision.  Id.

3         If the defendant articulates such a reason, the plaintiff bears the ultimate burden of

4   demonstrating that the reason was merely a pretext for a discriminatory motive.  Id.  The

5   plaintiff may show pretext "either directly by persuading the court that a discriminatory

6   reason more likely motivated the employer or indirectly by showing that the employer's

7   proffered explanation is unworthy of credence."  Villiarimo v. Aloha Island Air, Inc., 281

8   F.3d 1054, 1062 (9th Cir. 2002).  Circumstantial evidence relied on to show pretext must

9   be "both specific and substantial."  Id.

10        The District asserts that, even if Plaintiff made out a prima facie case of retaliation,

11  it has rebutted that case by articulating a legitimate nondiscriminatory reason for its

12  decision.  (Def.'s Mot. for Summ. J. 12.)  The District contends that it was aware of

13  Plaintiff's EEOC filings when it initially approved re-hiring Plaintiff on May 11, 2005,

14  and decided to rescind the offer of employment because of Plaintiff's subsequent conduct.

15  (Id.)

16        Plaintiff asserts that a causal connection between the May 9, 2005 EEOC charge

17  and the District's decision to rescind her offer of employment may be inferred from the

18  proximity in time between the two.  (Pl.'s Resp. 8-9.)  This assertion, while accurate, see

19  Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986), is problematic for

20  several reasons.  First, it fails to demonstrate why the District's legitimate

21  nondiscriminatory reason is merely a pretext.  In fact, the word "pretext" does not appear

22  in Plaintiff's response.  However, the same evidence that makes out a prima facie case

23  may be relied upon to establish pretext.  Id. at 732.  Therefore the Court will treat

24  Plaintiff's temporal proximity argument as Plaintiff's position regarding pretext.

25        Nonetheless, the causal inference that may be drawn from the temporal proximity

26  fails to persuade the Court that a discriminatory reason more likely motivated the District,

27  or that the District's proffered explanation is unworthy of credence.  Villiarimo, 281 F.3d

28  at 1062.  The Court should not look only at the length of time, without regard to factual

1    circumstances, when ruling on a motion for summary judgment.  Coszalter v. City of

2    Salem, 320 F.3d 968, 978 (9th Cir. 2002)("In some cases, the totality of the facts may

3    form such a clear picture that a district court would be justified in granting summary

4    judgment, either for or against a plaintiff, on the issue of retaliatory motives.").  As

5    discussed above regarding the First Amendment claim, Plaintiff's offer of employment

6    was rescinded on account of her conduct subsequent to the April 26 meeting.  Plaintiff

7    refused to accept direction from Desert Vista administrators, refused to meet with the

8    administrators to accommodate her work responsibilities in light of the injunction she

9    obtained against Dr. McDonald, threatened to "call the Sheriff" and have one of them

10   arrested, and refused to park and clock in at the designated locations.

11       Plaintiff asserts that she refused to meet with the Desert Vista administrators

12   because the administrators were attempting to "negotiate terms of a Court Order," i.e., the

13   injunction against Dr. McDonald.  (Pl.'s Resp. 7:17-19, 9:15-16.)  This contention is

14   supported only by Plaintiff's subjective beliefs, and is contradicted by the record.

15   (Compare Dkt. 70, PSOF, Ex. 17, Decl. of Jim Goggin ¶ 41 ("My impression was that she

16   felt that Mr. Cox or the District were attempting to involve her in conduct that the court

17   staff had warned her against.") and id., Ex. 16, Decl. of Loretta Avent ¶¶ 86-87 ("It was

18   apparent to me that they intended to try to negotiate the terms of the [injunction] . . . . I

19   was concerned that [Bob Cox was attempting to negotiate the terms of the injunction.]")

20   with DSOF, Ex. 1, Decl. of Janet Seegren, Ex. B, Letter to Loretta Avent dated May 13,

21   2005 ("In order to make sure that you receive the message I intended to deliver this

22   morning I have decided to put this in writing . . . . We are hopeful that this plan will

23   provide the protection you claim you need.").)

24       Plaintiff's causation argument is further undermined by the fact that the District

25   was aware of Plaintiff's March 2005 EEOC charges when it extended an offer of

26   employment in May 2005.  (DSOF ¶¶ 37, 42.) The second of these EEOC charges alleged

27   retaliation against Plaintiff for "continuing to oppose the school's pattern and practice of

28   abandoning the educational mission of the students of color and by exercising the

1   protection of Native American students." (DSOF, Ex. 10.) Despite these charges, the

2   District extended an offer of employment. Plaintiff's third EEOC charge filed May 9,

3   2005 repeated the allegation of retaliation for "opposing the school's pattern and practice

4   of abandoning the educational mission of the students of color." (DSOF, Ex. 14.)

5   Plaintiff fails to address why the District would extend an offer after the second EEOC

6   charge, but would rescind the offer in retaliation for the third EEOC charge. Although

7   the offer was rescinded after Plaintiff's third EEOC charge, the evidence clearly

8   demonstrates that the decision was motivated by Plaintiff's subsequent conduct. See

9   Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996)("We therefore

10  hold that where the same actor is responsible for both the hiring and the firing of a

11  discrimination plaintiff, and both actions occur within a short period of time, a strong

12  inference arises that there was no discriminatory motive.").

13        Plaintiff also asserts that she was subjected to adverse terms and conditions of

14  employment after she filed her first EEOC charges and while she was still employed.

15  (Pl.'s Resp. 9:5-13.) Plaintiff alleges that she was shunned, she was subjected to an

16  attempt to rescind her prior positive performance evaluation, and that Janet Seegren

17  opened an "investigation" of Plaintiff. (Id.) As to being "shunned" and Ms. Seegren's

18  "investigation," Plaintiff fails to direct the Court's attention to competent evidence that

19  supports her assertion. Title VII only protects against retaliatory acts which are

20  "materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct.

21  2405, 2415 (2006). "We speak of material adversity because we believe it is important to

22  separate significant from trivial harms." Id. Plaintiff's assertion as to being subjected to

23  an "attempt" to rescind her performance evaluation by definition fails to demonstrate any

24  harm. Id. at 2414 ("The anti-retaliation provision protects an individual not from all

25  retaliation, but from retaliation that produces and injury or harm.").

26        Plaintiff has failed to demonstrate that a discriminatory reason more likely

27  motivated the District, or that the District's proffered explanation is unworthy of

28  credence. Villiarimo, 281 F.3d at 1062. The totality of the facts "form such a clear

1   picture" to justify granting summary judgment in favor of the District on the issue of

2   retaliatory motives.  Coszalter, 320 F.3d at 978.  The District's motion for summary

3   judgment shall be granted as to Plaintiff's Title VII claim.

4   **D.  Title VI**

5       Plaintiff's fourth and final claim for relief alleges a violation of Title VI of the

6   Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*  (First Am. Compl. ¶¶ 46-48.)  "No

7   person in the United States shall, on the ground of race, color, or national origin, be

8   excluded from participation in, be denied the benefits of, or be subjected to discrimination

9   under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

10  However, Title VI contains an important limitation: "Nothing contained in this subchapter

11  shall be construed to authorize action under this subchapter by any department or agency

12  with respect to any employment practice of any employer, employment agency, or labor

13  organization *except where a primary objective of the Federal financial assistance is to*

14  *provide employment*."  42 U.S.C. § 2000d-3 (emphasis added).  Plaintiff must therefore

15  establish that the District received federal funds, and that providing employment was a

16  primary objective of those funds.  Temengil v. Trust Territory of Pacific Islands, 881 F.2d

17  647, 653 (9th Cir. 1989)(upholding dismissal of class action employment discrimination

18  claim); see also Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1531-32 (10th Cir.

19  1995)(upholding summary judgment where plaintiff offered no evidence federal funds

20  received by school district were for a primary objective of providing employment).

21      The District contends that Plaintiff cannot establish the requisite elements of her

22  Title VI claim, in that the District receives funds for education, not employment.  (Def.'s

23  Mot. for Summ. J. 16-17.)  Plaintiff's response fails to address this contention in any

24  fashion whatsoever.  (See Pl.'s Resp. 12-13.)  No genuine issue of material fact existing

25  as to whether the District received federal funds for a primary objective of providing

26  employment, the District's motion for summary judgment shall be granted as to Plaintiff's

27  Title VI claim.  See Temengil, 881 F.2d at 653.

28  //

1

**CONCLUSION**

2

For the foregoing reasons,

3

**IT IS HEREBY ORDERED** granting Defendant Tempe Union High School

4

District No. 213's Motion for Summary Judgment (Dkt. 63).  Plaintiff shall take nothing

5

by this action, and judgment shall be entered in favor of Defendant.

6

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment

7

accordingly.

8

DATED this 13th day of May, 2008.

9

10

11
Stephen M. McNamee
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28